Number 181424 Daniel Grajales et al. v. Puerto Rico Ports Authority May it please the Court, Eugenio Heyhill Simonet today on behalf of Apland, and I respectfully request two minutes for rebuttal. Eugenio Heyhill Simonet Thank you, Your Honor. Your Honors, we are here today to deal with the issue primarily of res judicata on this civil claim in which this Court recent in our estimation erroneously on the application of Puerto Rico law. Now, it goes without saying that one of the first lessons to be learned on the subject of res judicata is that a judicial determination does not necessarily mean the absolute truth, and I think that's applicable here. In order for res judicata to apply as the Court intended it to here, there are two very specific targeted elements that need to be addressed, and that's subdivided. One is the four elements of the perfect identity of the thing, the cause, the persons of the litigants, and the capacity between the persons. The other issue we look at is the public exception doctrine, which holds in Puerto Rico pursuant to ample Supreme Court law in Puerto Rico. And I think this is quite abundant here because when we go back in the briefs in which I've submitted, we see this element resonate time and time again through the years. Now, as it pertains to those two issues specifically here, I would respectfully submit to this Court that when we look at the statute, that first element made up of the four requirements, all of those requirements are required here. Now, granted, APELI may have some persuasive arguments, at least as to one of those being on the cause, but not as to the others. And we looked at this in determining how it is that it applied to the Grajales case. In the Superior Court matter, when the issue at hand was pursuant to the Secretary of Labor's special faculties under the statute to take that case on behalf of him, it was limited in scope to those particular elements, them being that he had to be returned to work and be remunerated for the payment for what would have been his payments during the time he would have been working at the time. In the District Court, we had a distinctive claim to the extent that we were dealing, yes, with Mr. Grajales, but there were another whole set of elements being presented for the Court's consideration in terms of the claim, particularly as it pertains to the damages. And in that sense, we're not limited as the Superior Court matter was limited on that issue. Henceforth, we feel that the rest of the CATA elements required under the law were not present for which there is not a perfect identity applicable in this case. Of course, the other one being that in the case before us, we have Mr. Grajales, as well as Ms. Gonzalez, and at the time, the three minor children, which were also a part of this claim. But I think, Your Honors, perhaps more importantly is the fact that in Puerto Rico, we have the public exception, which this case, this Court, I beg your pardon, I know it has actually entertained on occasions, particularly Judge Thompson, the matter of Nunez-Colón versus Toledo-Davila addresses issue. And it was interesting because in that case, while there was a finding against the appellant, the specifics of that case were that no Puerto Rico public exception applied by the mere invocation of a constitutional right. But more importantly, this Court added that the Court has to do an inquiry of the particular circumstances of the case. In that case, the present case, I respectfully request the same from this Court here. And the reason for which I do that is that the public policy exception pursuant to the particular circumstances of this case are that we're dealing not only with a constitutional right, which is one of our subjects on the First Amendment claim, but with the issue of retaliation for which even Law 115 was specifically legislated to address these types of issues. Henceforth, meaning that there is a very important public policy issue to be looked at when we're dealing with this type of cases. Not to mention that in the particular facts of this case, the allegations dealt with an employee being placed in a position of what was considered dangerous to his health, given that he had been obligated to work, he was a security officer, being asked to work with aspects that are required technical, electrical know-how, which he did not know about. As a result, this is why Puerto Rico OSHA comes in, makes an, opens up an investigation, and the determination is made that a case needs to be opened, investigated, and filed as to this issue of retaliation. So when we step back for a minute, Your Honor, and we take all of these circumstances, the totality of the circumstances as a whole, they clearly indicate and dictate that there is a public policy exception. So when we look at this issue of res judicata, we're looking at it, like I said it earlier, not only from the four elements required, but also from this issue of public policy that needs to be addressed and which we respectfully refer the Court to our caseload, particularly Casa Mari, Inc. versus Superior Court, which states, res judicata does not lie if it produces an injustice, particularly in merits of public policy, as well as peresallas, Your Honor. Peresallas is interesting because that is a case in which it addresses this issue that the federal claim could not have been brought forth in the previous case. That is the exact same issue we have here. If the Secretary of Labor is filing this claim on behalf of Grajales, he can't file a federal claim like we did in this case. So there is that difference. We point out at page two of our reply brief to ample caseload, and particularly we'd like to bring the Court's attention to Pagani-Hernandez versus UPR, 107 DPR 212, 1992. And the reason for which we mention that is because, interestingly enough, in the Nunez-Colón case, which I previously cited, the Court addresses that case. And from looking at all the caseload that we've entertained, Pagani-Hernandez, to this date, in my estimation, pursuant to my research, appears to be the standard bearer. For example, it holds that res judicata rests on the principle that termination of litigation should be encouraged, but a rigorous application of res judicata would result in defeating rights affecting public interest. Courts should lean towards solutions that will guarantee complete award of justice rather than favoring rigid applications of legal fiction based on the principle of convenience of procedural nature. And Pagani-Hernandez, Your Honor, resonates going forward when we look at the case, like I previously indicated, of Casa Marie versus Superior Court, as well as Barreto Rosa versus Verona-Mendez, also which are a part of my briefs. Plamos-Gonzalez versus Felix Medina, a 1988 case which is a bit older than Pagani-Hernandez, also raises this issue. It must avoid serious and manifest injustice. And, Your Honors, we stand before you humbly after almost 10 years of litigation in this case. In fact, this is the third time that we've been before this Court. The truth of the matter is that while it's been a long and arduous road as we stand here today, we feel that taking into consideration the fact that what is the applicable law in Puerto Rico, which I think we can both, my colleague and I, can agree it's the applicable law, which is the res judicata, as interpreted by the Puerto Rico Supreme Court to our case. That law, as applied to the facts before us, as I've indicated pursuant to the four requirements and the public policy, combined with, like Judge Thompson indicated, the particulars of this case, goes to the heart of the issue, why which res judicata should not hold in this case. Now, we've also raised a separate, even though somewhat connected, argument on the issue of the First Amendment claim. And Your Honors, in that particular aspect, the District Court rests for the most part on the Ceballos case, which we brought to the District Court attention was differentiated with Lane v. Franks, which was a 2016 case. At the time that the parties were submitting their motions and arguing, that was as recent a case as one could have had for purposes of doing this analysis. And while it's separate, but linked, it's interesting because when you break down the analysis pursuant to Lane in doing the three-step analysis, we see and feel the constant facts that are being held in this case. For example, Mr. Grajales, Your Honor, did not renounce his citizenship when he became an employee of the government. That stays with him. This is what Justice Sotomayor was addressing in the Lane case. In doing that analysis, three steps to be taken, whether or not it is a matter of public concern to do a balance between the First Amendment interest and the government interest. And of course, if it survives step one and step two, then the employee has to show that it was protected speech, that the protected speech was a motivating factor behind the adverse employment action. Of course, in this forum, in the federal forum, that third step would be really a jury question, which of course we don't have the benefit of in Puerto Rico. However, that even brings us further to this prior argument I raised with Judge Dicata that because it is such an important issue that we are addressing, it fits within the scope of this public policy exception, even if it's a First Amendment right, it's recognized in the Constitution of Puerto Rico also. And certainly while you do a balancing act of the two, it would seem to me that there was an attempt to look out for the well-being within the employment of one of his colleagues as part of the First Amendment right that he has vis-a-vis whatever the government's interest may be, which I should note in the underlying case, the Puerto Rico Port Authority was under threat of being severely fined for their failures to have provided a safe work environment to that employee. So again, it also convinces back to this issue of a substantial public policy exception to the matter before us. And Your Honors, I would finally note that when the Superior Court dismissed this matter pursuant to summary judgment under Puerto Rico Rule of Civil Procedure 36, it also went against the public policy notion that this type of cases are disfavored to be ruled pursuant to Rule 36, and we cite at page 24 of our initial brief, Soto v. Curry v. Hilton, which holds on that very issue. Without further ado, if there are any questions from Your Honors?  Judge Barron? Well, just on the public policy exception, what is the best case, I'm just trying to understand what your basis for the public policy exception is. Is it that it's a First Amendment claim? Well, that's one, Your Honors, it's a First Amendment claim, and the other aspects would be pursuant to that we're dealing with a retaliation type of a case for which special legislation was enacted in Puerto Rico in 1991, as well as to dealing with the well-being and health of employees in their place of work. So what is the best, what case should I look at that would suggest that, that holds that those circumstances qualify as a public policy exception? That is an excellent question, Your Honor, because the answer to that question is there is no one specific case. In fact, if we look at, if I just made a map of cases that I've submitted to the court, it deals with different aspects. Nunez, for example, dealt with this issue of an administrative ruling. The case on Ramos-Gonzalez and Pagan-Hernandez, Pagan-Hernandez, for example, addresses the issue of education as being one of those forefront public policy exceptions. So I, unfortunately, did not find a case that would specifically tell this court, well, you know this case, either in the Supreme Court of Puerto Rico or the district court or the circuit specifically addresses those points which I've raised. Nonetheless, I've raised... Is it clear, is it clear that Puerto Rico law governs this question? And, Your Honor, just so that I'm clear, whether Puerto Rico law governs the question of race judicata? Governs the question of race judicata such that if there's a public policy exception under Puerto Rico law, then we would not apply race judicata. Just to make sure I understand. So the question is whether the public policy exception, and I beg your pardon because I had a hard time listening to the last part of the question. I'm sorry. Yeah, I've just been trying to figure out whether... If the Supreme Court of Puerto Rico gave a definitive answer to the question of whether this public policy exception applied to these facts, would that be dispositive of the issue? In other words, federal law of race judicata is not relevant here. To the extent it is relevant, it just incorporates Puerto Rico law. Right. Yeah, it would be. It would be. So has anyone... Did you move to certify the question to the Puerto Rico Supreme Court? Nobody did to certify this specific question to the Supreme Court, no, Your Honor. Well, if we rule against you, would we be making new law under Puerto Rico law with respect to the scope of the public policy exception? I would say, one, yes, and two, more importantly, and respectfully... We'd be making new law if we ruled for you also. Well, but I think more than that, respectfully, we'd be going against... In part, it would be going against established law because like I indicated, even though I couldn't pinpoint a specific case to address my core issues, I do have case law which I So it's a matter of a partial response to the extent that you would to the extent that nothing's been established on that, but at the same time, it would be contrary to the existing law, particularly with Pagan-Hernandez and Ramos-Gonzalez versus Felix Medina. I take it you'd have no objection to certification? Beg your pardon? You'd have no objection to certification of that issue? No, I would not, Your Honor. All right. Thank you. Thank you. Good morning, Your Honors. Luis Palo for APALEE, Puerto Rico Ports Authority. May it please the Court. We are here on a review of a judgment issued on summary judgment based on res judicata. I want to point out that the judgment issued by the Puerto Rico Superior Court of Aguadilla ruled that there was not even a shred of evidence supporting Grajales' thesis that his termination resulted from his participation in the complaint filed in the Puerto Rico Occupational Safety and Health Administration. Moreover... Excuse me, I didn't... You can only win on this appeal if res judicata applies. Is that correct? Well, the motion for summary judgment was based on res judicata, yes. Yeah. So, okay. So, I guess just to follow up on the set of questions I had for your opponent a second ago. Their argument is res judicata does not apply because of the public policy exception. So, regardless of how good or bad the decision below was that you're saying has res judicata effect, they say it doesn't matter because res judicata simply can't apply under Puerto Rico law because the public policy exception applies here because this is a First Amendment claim. And he says there's no clear law from the highest court in Puerto Rico as to whether the exception does or does not apply here. And I guess I just would like your view of what law I'm supposed to look at to decide whether the public policy exception that Puerto Rico law recognizes for res judicata encompasses this type of claim given that it's a First Amendment retaliation claim involving health and safety. Well, your Honor, there are decisions by the Puerto Rico Supreme Court that have been reviewed by this First Circuit, in particular in universal versus office internal commissioner 755 Federal 3rd 34, covering the Puerto Rico court's decisions on public policy. And none of the situations where a public policy exception would apply, apply in this particular case. And APLAN has been unable to specifically identify one situation why that should be the case in this case. Well, I recognize that. I guess I'm just, I'm asking the opposite, or the corollary to that. Is there any authority that shows it does not apply? In other words, is there a case holding the public policy exception does not apply to X that I could rely on to say, well, if it doesn't apply to X, it obviously doesn't apply to this either. I'm sorry, I didn't hear that. I guess I recognize there's no case holding that the public policy exception applies to a case involving a First Amendment retaliation claim for health and safety issues. No, there's not. Right. But I'm asking, is there any case that holds that it does not apply to that situation? Or is there even a case holding the public policy exception does not apply to X situation in which I could conclude because it does not apply to X situation, it must not also apply to this situation? No, there's, I'm not aware of any case like that. But doesn't that suggest that it's just an open question under Puerto Rico law whether they would extend the public policy exception to this situation so that we should certify it to the Puerto Rico Supreme Court to give us an answer to that? Well, Your Honor, what I believe is that from the cases that have been cited in the briefs, there is where the Puerto Rico Supreme Court has been in a position to open the opportunity to have an exception. And specifically, it is not to be applied lightly. And if it has not been resolved by the Puerto Rico Supreme Court that this is one of those cases, I do not believe that it should. Well, I guess what I'm asking, that would be a good argument to me if there was some instance where they declined to extend the exception in a circumstance that would seem analogous to this situation. But that's what I haven't heard yet. So is there a case like that? Is there a case where they said the exception does not apply to X situation and then you can make an argument that X situation is materially the same as this situation so there's good reason to think Puerto Rico Supreme Court would do the same? I'm not aware of such a case. Well, that seems like the classic situation where we just don't know what the Puerto Rico Supreme Court would do when confronted with a case involving this type of issue. I mean, do you see my problem? Yes. Yeah. The exception, I see it in the contrary. If it has not been resolved that it is an exception, then it should be. Well, they just may not have had a case involving a situation like this, so that wouldn't tell me very much. The question is whether the reasons that they give for recognizing the exception are reasons that might extend to this situation or whether those are the types of reasons that couldn't possibly extend to this situation. So I guess it would be helpful to me if there was some argument about why the reasons the Puerto Rico Supreme Court give us for recognizing the exception are the kind of reasons that would not encompass this type of case. Because what their argument is, look, this seems like an important case. It's a First Amendment issue. It implicates issues of health and safety for employees of the government and for the public generally. So why wouldn't that be the kind of thing that's significant, like education or something like that? Yeah. But also, in this particular case, we also argue that the expression made by the Grajales was not one that should be protected by the First Amendment. But that's an argument that's unrelated to the public policy exception in relation to the CAVA issue. Well, if it is not protected by the First Amendment, then it should not be an issue of public policy. So the matter would be to address that particular incident of whether or not it was an expression made as a citizen in a public concern. And we understand that it was not, since it was made as part of his duties in an email message to his superior. So are we supposed to decide that independent of the ruling below then, you'd say? We first make that ruling on our own to decide whether to apply the public policy exception? Well, you mean the district court ruled that no public policy exception would apply? I know that. What I'm saying, you're now telling me that to decide whether the public policy exception applies, I first should make a decision as to whether this was public employee speech to begin with. Because if it wasn't, then the public policy exception couldn't apply. But I take it I make that decision on my own to decide whether the exception applies. Well, from what Athalan has raised, it's not clear what the public policy exception he is claiming. He's claiming that it was an issue of the law or the First Amendment. If it's a First Amendment, then we have to first determine whether or not it was a First Amendment protective expression. Can't you claim res judicata at an earlier stage, though? You could do that on – it's an affirmative defense, right? You couldn't do it on a motion to dismiss. No. Because the Superior Court of Aguadilla issued judgment after. No, I don't mean in this particular case. I just mean in general. If you could seek dismissal on the basis of res judicata. Yes, you may. Well, if you can do that, you're certainly not going to go behind the complaint to see whether there's really a claim. I'd like to ask you this question. So in some of the cases that I looked at that they talked about, for example, res judicata, the public policy exception might apply if the prior case involved a minor, if it was moot, if there was a failure to prosecute, if the proceeding was tainted. Those all seem to go toward something sort of intrinsic in that prior decision. Now, this case about education may open the field up. Had you looked at it from that perspective so that we could sort of, you know, to help us figure out whether we should care about the fact that it's a First Amendment claim or a retaliation claim? Well, in the education case of Pagan, it was also precisely something related to the administrative procedures that were not completely, not give an opportunity completely to the student. Sort of a taint. So it was similar. That is the cohesive element of the public policy exception. Yes, that there is a procedure that was tainted, that there was fraud, that it was a failure to prosecute, that the plaintiff did not appear, that there was no jurisdiction of the court. But in this case, Grajales was in the case. He was represented by a legal representative. He did oppose the motion for summary judgment on the state court. And he did decide not to appeal. Why? Well, that is not his fault. He didn't have to file that case in Puerto Rico Superior Court either. He could file it here. He later amended. After that case was filed in Puerto Rico, he later amended this case to include those same claims. And when the Superior Court issued judgment determining precisely this particular controversy, why Grajales was terminated, whether it was for his expressions regarding the security of an employee made to his supervisor, whether that was the reason or not. And the Superior Court determined that based on the entire record that were communications, a deposition, that he was not terminated because he made any expression regarding the employee, but because he incurred insubordinate conduct, communications to other supervisors, not following instructions. And that was the sole reason for his termination. And that is why precisely this is the same controversy here. So it was a run of who was the court that was going to rule first on that particular controversy. In this case, it was the Superior Court in Puerto Rico. So we have to give it full faith and credit and assume all the facts that were ruled by the court, and they are presumed valid, and we are requesting here that they apply them here. And the district court, we understand correctly, applied the rule of res judicata under both. Issue preclusion and claim preclusion. And dismiss this case. Well, I think that might be a compelling argument, but for we have this public policy question, so we may not even get to any of that, but fair enough. Did you have any final points that you wanted to make? No. Judge Barron, do you have additional questions of counsel? I have one question, which I realize is maybe a bit out of left field, but it just occurred to me. And I know in an earlier Guha case, we decided that the courts authority was not an arm of the state, but I'm just wondering whether there's been any thought given to whether the PROMESA stay might apply here. And I just ask that because I can't remember exactly how the funding situation works for the courts authority, but if there was a damages claim, exactly how it would be paid and out of what funds. So I just wonder whether there's been any thought given to whether the stay would apply. Your Honor, we addressed that in initial briefs, indicating that Puerto Rico Ports Authority is an independent public corporation, and it was not part of the PROMESA filing by the government, the central government, and it has not filed by itself any requests under the PROMESA. So the stay does not apply to the Puerto Rico Ports Authority or this case. Thank you. Thank you. Good morning again, Your Honors. On the universal insurance case cited to by APELE, that case dealt specifically with the authorization as to whether or not an automobile insurance could relitigate a claim which had been dealt with at the administrative level. So I don't think that even comes near to the issue of what we're all dealing with here in terms of this public policy exception. As it pertains to my colleagues' comments on Pagan-Hernandez, Your Honors, if the Supreme Court of Puerto Rico at that point, and I understand his position in making his argument in the sense of what was being dealt with at the administrative level and how res judicata may apply. More importantly on that case is, Your Honors, the fact that when the court issued its ruling, it wasn't looking so much at that. It was looking at the issue of education being a subject of this public policy exception. Now, education may well have been considered as such and was established as such, but when we're dealing with a First Amendment claim, I think that issue goes to the forefront and above that specific issue of education in terms of importance. And in listening to Your Honors, it's interesting because going back to my brief, I look at a specific site from Judge Thompson and Nunez's case in which the court specifically stated, Regrettably, Puerto Rico jurisprudence available in English translations that address the public policy exception does not articulate a clear standard as to when the exception applies. So I'm understanding, I suppose, from where the court is coming from on this issue, but keeping it narrow to that very argument, I would respectfully submit that, again, we're dealing with a public exception issue which goes above those that have been established by the Puerto Rico Supreme Court in dealing with administrative matters and education matters and encompasses this issue of harassment as well as safety in the employment. Thank you. Thank you, Your Honors. Before you step back, Judge Barron, any further questions? No, I think I'm okay. Thank you all. Thank you, Your Honor. All rise.